therefore, that are received by the United States under such circumstances, are to be deemed payments upon the whole debt, and they must be applied pro rata to the extinguishment of all. It is not like the case of payment by a debtor, where he failing to make an appropriation at the time of the payment, the creditor may then appropriate it as he pleases. In cases of assignments and other cases where the right of priority attaches, the provision is in effect, that the fund shall be first applied to the extinguishment of debts due to the United States. But the assignees are to apply the fund generally, not to one particular debt, but to all debts due to the United States. It would be a violation of their duty to apply it to one debt, to the fraud or injury of sureties. If they are to pay generally, without any specification in the assignment of any preference or priority of any particular debt of any creditor, the law deems each debt as equally entitled to be extinguished pro rata; for equality is in such cases equity. The assignor has not trusted the assignees with any authority to create a preference, and the creditor has no right to demand it. He must make payments as the debtor has provided, or as the law upon his omission has appropriated them.

The argument at the bar has gone somewhat farther, and assumed, that the court, in cases of this nature, will undertake to adjust mere equities between the principal and sureties ·on different bonds, and the creditor. Without saying that the court will never undertake such a duty, it is sufficient to say, that the case must be very special indeed, in which it will interfere against the creditor to adjust equities between different classes of sureties, with which the creditor has no privity or connexion. All that the court will generally do·in cases of this nature is, to see that the creditor does not himself misapply the payments. The creditor has nothing to do with the state of the accounts between different sureties, or with cross claims, which they might assert against each other, if they were the principal parties to the suit. And sureties have no right to call upon the creditor to change the general rule of law as to appropriation of payments, merely because it may not work right in respect to their own private claims, with which the creditor has no concern. It is very· clear to me, therefore, that in this case the whole fund ought, upon principle, to be applied pro rata in extinguishment of all the priority debts due to the United States. See Favenc v. Bennett, 11 East, 38, 42. But if the parties interested will consent to a different appropriation, there is nothing to prevent this court from carrying any such agreement into effect.

I shall therefore decree, that so far as respects the $12,000, admitted to be due from Dexter & Co. to Messrs. Adams & Amory, the fund now in court to that extent shall, with the consent of the United States, be appropriated to the extinguishment of the bonds and the judgments thereon, for which Appleton is surety, upon his delivering up the debentures, which have been given by the United States, for the draw-back of any of the duties on the goods, for which the same bonds were originally given, or his extinguishing in any other legal manner the same debentures. I wish to add, that it is not to be understood, that the court will exercise any authority, or interfere between different sureties, or adjust any equities between them in respect to the fund, except so far· as to direct that the appropriation shall be pro rata in cases where the right of priority attaches. All other arrangements are matters of private consent between the parties and the United States.

---

## Case No. 14,444.

UNITED STATES v. The AMPHITRITE.
[See Case No. 10,585.]

---

## Case No. 14,445.

UNITED STATES v. AMY.

[4 Quart. Law J. 163.]

Circuit Court, D. Virginia. May Term. 1859.

SLAVERY—CONSTITUTIONAL LAW—"PERSON"—LARCENY OF MAIL BY SLAVE—ACCOUNTABILITY THEREFOR.

1. Section 22 of the act of congress passed March 3, 1825 [4 Stat. 108], provides that, if "any person shall steal a letter from the mail, the offender shall, upon conviction, be imprisoned not less than two nor more than ten years." *Held*, that the word "person" is used in the constitution of the United States to describe slaves, as well as freemen, and that the constitution recognizes slaves both as persons and as property.

2. When the word "person" is used in an act of congress, the act may be construed as including slaves, unless there is something in the object and policy of the law, or in the provisions with which the word is associated, which manifestly indicates that it is used in a different sense, and was intended to apply to persons who are free

3. There is nothing of this character in this act, and therefore it includes slaves.

4. The act, thus construed, is constitutional.

5. The clause in· the 5th amendment of the constitution, which declares that private property shall not be taken for public use without just compensation, cannot, upon any fair interpretation, apply to the case of a slave, who is punished in his own person for an offence committed by him, although the punishment may incidentally affect the property of another, to whom he belongs. The clause applies to cases where private property is taken to be used as property for the benefit of the government, and not to cases where crimes are punished by law.

6. From the nature of our government, the same act may be an offence against the laws of the United States, and also of a state, and be punishable in both; yet in all civilized countries it is recognized as a fundamental principle of justice that a man ought not to be punished twice for the same offence, and if the slave Amy had been punished for the larceny in the state tribunal, the court would have felt it to be its duty to suspend sentence, and to represent the facts to the president, to give him an opportunity of ordering a nolle prosequi, or granting a pardon.